UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DON SHIRLEY ROWE SCOTT,

               Plaintiff,

v.                                                                                      11-cv-4167 (NSR)
                                                                 OPINION & ORDER

THE VILLAGE OF SPRING VALLEY,
COUNTY OF ROCKLAND, and
SPRING VALLEY POLICE DEPARTMENT,

               Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Don Shirley Rowe Scott ("Plaintiff") brings this action against the Village of Spring Valley, County of Rockland, and the Spring Valley Police Department ("Defendants") pursuant to 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth Amendment. Before the Court is Defendants' motion for summary judgment under Fed. R. Civ. P. 56. For the following reasons, Defendants' motion is GRANTED.

    I.     **Facts**[1]

      In or around June 2010, Plaintiff took a two-week trip to Maryland to visit his daughter. Defendant's 56.1 Statement ("Def.'s 56.1") ¶ 2. While he was away, Plaintiff left his vehicle, a 1995 van, at 16 Ridge Avenue, Spring Valley, for his mother to watch. *Id.* At the time, he and his mother resided in the same house. *Id.* Plaintiff returned from his two-week vacation in the evening on June 3, 2010. *Id.* ¶ 3. Plaintiff's mother knew that Plaintiff was scheduled to return on June 3, 2010 but Plaintiff had not informed his brother, who lived ten minutes away, of his

---

[1] The facts are undisputed, unless otherwise noted.



1

return date. *Id.* ¶ 2. When Plaintiff returned in the early evening of June 3, 2010, he dropped his bags off at his home and took his van to a West Indian Social club in Spring Valley. *Id.* ¶ 3. Upon returning to his house later that evening, Plaintiff saw police officers by the house and as he pulled into the driveway, at least one police car pulled up behind his van. *Id.* ¶ 4.

Earlier that day, Plaintiff's brother, Tennyson Scott, called 911 and reported Plaintiff's van as stolen. *Id.* ¶ 11. Tennyson Scott did not know that Plaintiff had returned from vacation and believed that the missing van had been stolen. *Id.*

Officer Oscar Lopez was working as a patrolman and received a radio transmission around 11:00 p.m. that a 1995 white Ford van had been stolen from 16 Ridge Avenue. *Id.* ¶ 5. Officer Lopez spotted the van and radioed for assistance. *Id.* ¶ 6. Officer Joseph Brown was working an anti-crime detail on the evening of June 3, 2010 and when he heard Officer Lopez's radio transmission, he drove to Officer Lopez's location. *Id.* ¶ 7. Officer Frank Gulla was on routine patrol and around 12:10 a.m., received a radio transmission regarding the stolen van and the desk officer told him to take a report from the 911 caller at 16 Ridge Avenue. *Id.* ¶ 8. As he was on his way to 16 Ridge Avenue, Officer Gulla heard Officer Lopez's radio transmission and when he arrived, Officer Lopez was already on the scene. *Id.* ¶ 9. Sergeant Roxanne Lopez was working as a plainclothes detective and when she heard the radio transmission regarding the stolen vehicle, drove to 16 Ridge Avenue in her unmarked car. *Id.* ¶ 13. Sergeant Charles Schnaars also heard Officer Lopez's radio transmission and responded to 16 Ridge Avenue as a supervisor. *Id.* ¶ 15. Sergeant Schnaars did not perceive any immediate threat and left after he determined that the situation was under control. *Id.*

At least two officers approached Plaintiff in his van and gave verbal commands to Plaintiff to throw his keys out of the window and exit his vehicle. Plaintiff's Statement of

Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") ¶ 4. Officers Joseph Brown and Oscar Lopez were the two officers who approached Plaintiff's car. Def.'s 56.1 ¶ 10. It is unclear whether Sergeant Lopez also approached Plaintiff's car while he was inside. *Id.* ¶ 14; Pl.'s 56.1 ¶ 10.[2] Plaintiff voluntarily exited the van and he was handcuffed with his arms behind his back. Pl.'s 56.1 ¶ 10. Plaintiff heard a popping sound in his shoulder as he was being handcuffed. *Id.*

Tennyson Scott was at Plaintiff's residence when Plaintiff returned in his car and was placed in handcuffs. *Id.* When Tennyson Scott exited the house and informed the police that Plaintiff owned the van, the officers removed Plaintiff's handcuffs. *Id.* ¶ 12.

Officer Lopez retired after a 32-year career as a police officer. *Id.* ¶ 17. He began his career at the City of Newburgh Police Department in 1981 and initially received 15 weeks of training from the Rockland County Police Academy ("RCPA"). *Id.* ¶ 18. Since then, he receives yearly in-service training, a requirement for all police officers. *Id.* ¶ 19. Officer Brown received six months of training at the RCPA in 1993 when he began working for the Spring Valley Police Department. *Id.* ¶ 23. Sergeant Lopez also attended a five- or six-month course at the RCPA in 1997 when she began working for the City of Newburgh Police Department. *Id.* ¶¶ 26-27. Officer Gulla attended a six-month training course at the NYPD Police Academy in 1986 as well as additional training from the RCPA. *Id.* ¶¶ 31-32. Sergeant Schnaars received four months of training at the RCPA in 1998. *Id.* ¶ 35. Sergeant Lopez and Sergeant Schnaars are instructors on various topics. *Id.* ¶¶ 28, 36.

## II. Legal Standards
### a. Summary Judgment Standard

---

[2] Defendant states that upon arriving at 16 Ridge Avenue, Sergeant Lopez saw that there were other police officers on the scene and determined that she was not needed so she returned to her detail. Def.'s 56.1 ¶ 14. Plaintiff states that a Hispanic female police officer in plainclothes approached Plaintiff's passenger side window while he was in the car and banged on the window. Pl.'s 56.1 ¶ 10.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue[3] of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter,"

---

[3] The 2010 amendment to the Rule retained the summary judgment standard of former subdivision (c), but replaced "issue" with "dispute" because the term "better reflects the focus of a summary judgment determination." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments. Thus, the terms are interchangeable in this context.

*Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact . . . ."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

### III. Discussion
#### a. Claims against Spring Valley Police Department

"Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 195 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (citations omitted). Police departments are just such administrative arms of their corresponding municipality. *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999). The Spring Valley Police Department is not a suable entity and therefore Plaintiff's claims against the Spring Valley Police Department must be dismissed. *See Tribie v. Parwanta*, No. 10 CV 6016(VB), 2012 WL 246619, at *5 (S.D.N.Y. Jan. 26, 2012) ("[The Spring Valley Police Department] cannot be sued.").

#### b. Claims against the Village of Spring Valley, County of Rockland

Plaintiff asserts a claim against the Village of Spring Valley stemming from the alleged use of excessive force when he was placed in handcuffs. A claim against the Village of Spring Valley must be premised on the theory that the municipality maintained a policy, practice, or custom that caused the plaintiff's constitutional injury. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Second Circuit has established a two prong test for § 1983 claims brought against a municipality. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom

in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id*. (emphasis added) (citation omitted). Second, the plaintiff must establish a "'direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *accord Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting *City of Canton*, 489 U.S. at 385).

A plaintiff "need not show that the municipality had an explicitly stated rule or regulation" to establish a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). Rather, to satisfy the first prong, a plaintiff must prove the existence of either:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).

Because a *Monell* claim is not itself an independent cause of action, but rather an extension of liability to a municipality, there can be no *Monell* violation absent an underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Plaintiff does not assert claims against any individual defendant.[4] However, it is not necessary

---

[4] On September 17, 2013, Magistrate Judge Paul E. Davison denied Plaintiff's motion seeking leave to amend his Complaint to add individual defendants on the basis that the statute of limitations had run and the claims against the individual officers did not relate back to the filing of the Complaint. This Court denied Plaintiff's objections to that

6

for Plaintiff to bring a claim against the officer so long as Plaintiff "has properly pleaded and proved that he was the victim of the federal law tort committed by municipal actors and that the tort resulted from an illegal policy or custom of the municipality[.]"*Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "[T]he fact that the suit against the municipal actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality." *Id*. Plaintiff has yet to prove a constitutional violation, but he did plead that there was excessive force used by the police officers who handcuffed him. However, the Court assumes, for purposes of this motion only, that Plaintiff can prove that there was a constitutional violation. *See Tagliaferi v. Town of Hamden*, No. 3:10 CV 1759(JGM), 2014 WL 129223, at *11 (D. Conn. Jan. 14, 2014).

The only allegation in Plaintiff's Complaint regarding the municipality is that it "fail[ed] to promulgate proper and/or adequate rules and regulations governing the use of force in circumstances similar to those prevailing at the time of the incident." Complaint ¶ 22. Plaintiff's opposition to summary judgment proffers argues that the municipality is liable for failure to supervise and failure to train, the fourth way to prove a municipal policy, practice, or custom. There were no allegations of a failure to train theory in the Complaint, and Plaintiff may not attempt to amend his Complaint through an opposition to summary judgment. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (holding that plaintiff may not amend his complaint through argument in a brief opposing summary judgment); *see also Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003) ("A

---

order and similarly denied leave to amend. Plaintiff appealed both Judge Davison's Order and this Court's Order. *See* Docket Nos. 48, 52. Thus, there are currently no individual defendants in this action.

summary judgment opposition brief is not a substitute for a timely motion to amend the complaint.").

Even so, however, Plaintiff's *Monell* claim fails. For Plaintiff to base the Village's liability on a failure to train or supervise theory, Plaintiff must establish that the municipality's failure was the result of deliberate indifference. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983."); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007);. "[D]eliberate indifference is a stringent standard of fault . . . and necessarily depends on a careful assessment of the facts at issue in a particular case." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted). Deliberate indifference can be inferred if "the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Id*. at 334 (internal quotation marks and citations omitted); *see also Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights).

Plaintiff argues that the Village of Spring Valley was on notice that there had been other claims of excessive force but that the Village failed to investigate and respond to previous incidents and that such inaction infers that a policy existed. *See, e.g.*, *Ricciuti v. N.Y.C. Transit*

*Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The inference that a policy existed may, however, be drawn from circumstantial proof, such as . . . evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights."). Plaintiff cites to five federal law suits against the Village of Spring Valley that allege excessive force and other civil rights violations.[5] In one case, the plaintiff withdrew the excessive force claim and in another, the plaintiff withdrew the *Monell* claim against the Village.[6] Even including those two cases, there have been five lawsuits over fifteen years against the Village of Spring Valley that have alleged excessive force by Village of Spring Valley police officers. "[T]he Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged excessive force is not probative of the existence of an underlying policy by a municipality, police department, or department of corrections." *Tagliaferi*, 2014 WL 129223, at *12 (citing cases). The existence of five lawsuits spanning fifteen years against the Village of Spring Valley does not suggest that the Village was on notice of a risk to plaintiffs. Nor does it appear to be the case that any of the officers involved in this incident were involved in the prior cases. *See* Def.'s 56.1 ¶¶ 21, 25, 29 (no previous claims for excessive force against Officer Lopez, Officer Brown, or Sergeant Lopez).

---

[5] *Lieber v. Village of Spring Valley*, 40 F. Supp. 2d 525 (S.D.N.Y. 1999) (alleging excessive force, false arrest, and other civil rights violations); *Fate v. Charles*, ---F. Supp. 2d---, No. 11 Civ. 6838(JPO), 2014 WL 2527234 (S.D.N.Y. 2014) (alleging unreasonable search, illegal seizure, malicious prosecution, and excessive force); *Tribie v. Parwanta*, No. 10 CV 6016(VB), 2012 WL 246619 (S.D.N.Y. 2012) (alleging excessive force, malicious prosecution, negligent hiring, training, and supervision, and other civil rights violations); *Dobryakov v. Village of Spring Valley*, No. 3:08cv4488 (WWE), 2011 WL 1080316 (S.D.N.Y. 2011) (alleging false arrest, malicious prosecution, and excessive force); *U.S. ex rel. Thompson v. Village of Spring Valley*, No. 05 Civ.2005(LAP), 2006 WL 1889912 (S.D.N.Y. 2006) (alleging malicious prosecution, false arrest, and excessive force).

[6] In *Dobryakov*, the plaintiff withdrew the excessive force claim prior to summary judgment. *Dobryakov*, 2011 WL 1080316, at *1. In *Tribie*, plaintiff withdrew its *Monell* claim against the Village when Defendant moved for summary judgment on that claim. *Tribie*, 2012 WL 246619, at *5.

Under a failure to train theory, Plaintiff must identify the deficiency in the officers' training program and showing that the deficiency "actually caused or was the moving force behind the alleged violations." *Id*. at 193. Plaintiff alleges not that there was a lack of training, but rather that the training received was insufficient. Each of the officers on the scene at the time that Plaintiff was handcuffed had been trained in proper handcuffing. Def.'s 56.1 ¶¶ 18-19, 23, 27-28, 35. The two officers who were involved in placing Plaintiff in handcuffs also received training in the use of force, *Id*. ¶¶ 18-19, 23, and all officers present received or could describe the Village's police regarding the use of force.[7] The purported deficiency asserted by Plaintiff is that the Village of Spring Valley's policy on use of force in its guidelines are too broad and are not explicit enough in that it references Article 35 of the New York State Penal Law but does not state the language contained in the relevant provision. The Court finds this insufficient to create a material fact as to a deliberate indifference by the Village of Spring Valley where each officer deposed knew of the Village's policy and had relevant training.[8]

Thus, the boilerplate allegations in the Complaint that there was a policy or custom that led to an alleged deprivation of constitutional rights have not been substantiated. *See Shirer v. City of New York*, No. 11 CV 1832(RJD)(CLP), 2012 WL 5954254, at *1 (S.D.N.Y. Nov. 28, 2012) ("Not only is the record barren of specific evidence demonstrating the existence of a municipal policy or custom, . . . the complaint itself contains no factual allegations in support of plaintiffs' claim."); *see also McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705

---

[7] Although Plaintiff states that Officer Brown testified at his deposition that he did not receive any written guidelines regarding the use of force from the Spring Valley Police Department, when shown The Spring Valley Police Department's Guidelines and Policies, he stated that he was "quite familiar with [the document.]" Def. Ex. G, 21:17-24:20.

[8] Plaintiff also suggests that there was some deficiency in production of documents. However, the minute entry for a conference held before this Court on June 14, 2013 indicates that the parties agreed that discovery had been completed and there was no indication at any time that there was incomplete or inadequate production of documents.

(S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation."). The Court concludes there is no genuine issue of material fact regarding a custom, practice, or policy, explicit or implicit, nor is there any issue of fact that there was any deliberate indifference on the part of the Village to an issue for which it was on notice.

### IV. Conclusion

Accordingly, the Court GRANTS Defendants' motion for summary judgment. The Clerk of the Court is respectfully requested to terminate this motion, Docket No. 62, and close the case.

Dated: Aug 1st 2014  
White Plains, New York

SO ORDERED:

_____ 8/1/14  
NELSON S. ROMÁN  
United States District Judge